**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-00036-REB-CBS

RAPID FUNDING, LLC, a Colorado limited liability company,

    Plaintiff,

v.

JAMES RIVER INSURANCE COMPANY, an Ohio corporation,

    Defendant.

## ORDER DENYING MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on the defendant's **Motion for Judgment on the Pleadings, Based on Res Judicata, Statute of Limitations, and *Twombly*** [#12][1] filed February 22, 2012. The plaintiff filed a response [#17] and the defendant filed a reply[#18]. I deny the motion.

### I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

### II. STANDARD OF REVIEW

According to the defendant, the plaintiff's claim is barred by the doctrine of *res judicata*. *Res judicata* is an affirmative defense. As the defendant notes, technically, a motion to dismiss asserting this affirmative defense is brought as a motion for judgment on the pleadings under FED. R. CIV. P. 12(c). A motion for judgment on the pleadings is

---

[1] "[#12]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

evaluated under the same standard as a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6).  **Jacobsen v. Deseret Book Co.**, 287 F.3d 936, 941 n. 2 (10th Cir. 2002).

When ruling on a motion to dismiss under FED. R. CIV. P.  12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of FED. R. CIV. P.  8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  **Kansas Penn Gaming, LLC v. Collins**, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting **Conley v. Gibson**, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court of the United States supplanted the standard in **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Under **Twombly**, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  **Ridge at Red Hawk, L.L.C. v. Schneider**, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting **Twombly**, 127 S.Ct. at 1974).  "This pleading requirement serves two purposes:  to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." **Kansas Penn Gaming**, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true.  **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002).  Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of

2

a cause of action" will not be sufficient to defeat a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, – , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted).  **See also Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949.  **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965).  The standard will not be met when the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

3

those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. FACTUAL ALLEGATIONS

On October 12, 2006, plaintiff, Rapid Funding, LLC, purchased from defendant, James River Insurance Company, a property damage insurance policy covering an apartment complex. The policy allowed Rapid Funding to make a claim for property damage to the apartment complex. The policy covered the actual cash value of the buildings in the complex. On January 24, 2007, a fire destroyed one building in the complex. Rapid Funding made a claim on the James River policy. James River concluded that the loss is covered under the policy, but denied that it owed any money to Rapid Funding under the policy. James River asserted that the building destroyed in the fire had an actual cash value of less than zero.

James River filed a declaratory judgment action in this court seeking a judgment declaring that the building had a value of zero or less than zero at the time of the fire. Rapid Funding filed counterclaims, including a counterclaim asserting a claim for unreasonable denial of insurance benefits under §§10-3-1115, 1116, C.R.S. (§§1115 & 1116). United States District Judge Christine Arguello granted James River's motion to dismiss this counterclaim, with prejudice, finding that the alleged denial of insurance benefits took place before §§1115 & 1116 had taken effect. *James River Ins. Co. v. Rapid Funding, LLC*, Civil Action No. 07-cv-01146-CMA-BNB, *Order* [#128] filed March 2, 2009. Sections 1115 & 1116 took effect on August 5, 2008.

Subsequently, Rapid Funding's breach of insurance contract and bad faith breach of insurance contract counterclaims went to trial in Judge Arguello's case. The

jury found (1) James River breached the insurance contract by failing to pay to Rapid Funding the actual cash value of the building; and (2) James River acted in bad faith by unreasonably delaying or denying payment to Rapid Funding of the actual cash value of the building. In addition, the jury awarded punitive damages to Rapid Funding based on its finding that James River acted in a malicious or willful and wanton manner in denying payment to Rapid Funding. The jury rejected James River's contention that the actual cash value of the building was less than zero. *Complaint* [#2], ¶ 16. On March 16, 2010, Judge Arguello denied James River's Rule 59 post trial motions, including its motion for remittitur.

James River appealed the jury verdict and judgment. Ultimately, the United States Court of Appeals for the Tenth Circuit remanded the case to the district court for a new trial on damages only. The Tenth Circuit concluded that key building valuation evidence admitted at trial was not admissible.

> The Federal Rules of Evidence applied to the admissibility of Mr. Miller's valuation testimony. Because that testimony was based on technical or specialized knowledge, it was erroneously admitted under Federal Rule 701. The remaining evidence cannot support the jury's damages verdict. The error in admitting Mr. Miller's valuation testimony was reversible and not harmless. The damages verdict is REVERSED and the case is REMANDED for a new trial to determine damages.

***James River Ins. Co. v. Rapid Funding, LLC***, 658 F.3d 1207, 1222 (10th Cir. 2011). The portions of the verdict finding that James River breached the terms of the insurance policy by failing to pay the actual cash value of the building to Rapid Funding, that James River acted in bad faith when it failed to pay, and that James River must pay punitive damages were not appealed and still stand.

In the present case, Rapid Funding asserts a §§1115 & 1116 claim against James River. Rapid Funding asserts:

> Despite the fact that the breach of the duty to pay the "actual cash value" of the fire destroyed North Building became a final, non-appealable judgment on July 29, 2011, James River still made **no payment of any kind** to Rapid Funding for the "actual cash value." James River had and has no reasonable basis for denying and/or delaying and/or failing to timely pay for the loss.

*Complaint* [#2], ¶ 23.

## IV.  ANALYSIS

### A.  *RES JUDICATA*

The doctrine *res judicata*, or, in its modern form, claim preclusion, will "prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment." **MACTEC, Inc. v. Gorelick**, 427 F.3d 821, 831 (10th Cir. 2005). Three elements are required to apply the doctrine of claim preclusion: (1) a final judgment on the merits in an earlier action; (2) identify of the parties in the two suits; and (3) identity of the cause of action in both suits. *Id.* (***citing Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards***, 314 F.3d 501, 504 (10th Cir. 2003)). "If these requirements are met, [claim preclusion] is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit." *Id.* (***citing Yapp v. Excel Corp.***, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

In this case, Judge Arguello's dismissal of Rapid Funding's §§1115 & 1116 claim is a final judgment on the merits of that claim, and the parties in Judge Arguello's case are the same as the parties in this case. The key question is whether Rapid Funding is asserting in this case the same §§1115 & 1116 claim it asserted in Judge Arguello's case. Rapid Funding argues that its §§1115 & 1116 claim in this case is different because its claim in this case is based on James River's allegedly unreasonable

6

reaction to the final, non-appealable verdict holding that James River acted unreasonably and in bad faith when it failed to pay Rapid Funding the reasonable value of the building.  Although the exact value of the building has yet to be determined in Judge Arguello's case, Rapid Funding alleges and argues that the final and non-appealable portions of the verdict in Judge Arguello's case establish, without dispute, that some payment is due to Rapid Funding.  Given this legal landscape, Rapid Funding contends it is not reasonable for James River to refuse to make payment of any kind to Rapid Funding.

James River argues that the dismissal of the §§1115 & 1116 claim in Judge Arguello's case is *res judicata* and bars any §§1115 & 1116 claim by Rapid Funding concerning any denial of payment by James River based on the January 24, 2007, fire and destruction of the building.  I disagree.  The requirements of §§1115 & 1116 apply "to an insurer's acts of unreasonable delay or denial that occur after August 5, 2008, regardless of when the original claim for benefits was made."  **Kisselman v. American Family Mutual Ins. Co.**, ___ P.3d ___, 2011 WL 6091708 (Colo. App. 2011).  The requirements of §§ 1115 & 1116 impose a continuing duty on insurers as they adjust and process policy claims.[2]

Judge Arguello dismissed Rapid Funding's §§1115 & 1116 claim because it was based on facts that occurred before §§1115 & 1116 were effective.  Distinctly, Rapid Funding's claim in this case differs from its earlier claim because the present claim is based on James River's alleged unreasonable inaction after §§1115 & 1116 were effective and after key portions of the verdict in Judge Arguello's case became final and

---

[2] The fact that James River's earlier claims handling actions have been held not to be subject to the requirements of §§1115 & 1116 does not cleanse James River of its obligation to comply with §§ 1115 & 1116 after §§1115 & 1116 became effective.

7

non-appealable. Allegedly, the verdict in Judge Arguello's case and the resolution of the appeal constitute a significant changes in the claims handling landscape and implicate James River's continuing duty under §§1115 & 1116 to act reasonably in view of that changed landscape. For these reasons, I conclude that Rapid Funding's §§1115 & 1116 claim in this case is a different claim than the §§1115 & 1116 claim asserted in Judge Arguello's case. Thus, Rapid Funding's §§1115 & 1116 claim is not subject to dismissal based on *res judicata* because the third element of that doctrine, identity of the cause of action in both suits, has not been established.

### B.  STATUTE OF LIMITATIONS

For the sake of the motion to dismiss, the parties agree that a two year period of limitations is applicable to Rapid Funding's §§1115 & 1116 claim. This case was filed on December 9, 2011, and James River argues that Rapid funding cannot assert a §§1115 & 1116 claim based on events prior to December 9, 2009. James River reads Rapid Funding's current claim as a claim that James River reacted unreasonably to the verdict in Judge Arguello's case, which was rendered on May 4, 2009. Rapid Funding argues that its claim is based on James River's allegedly unreasonable reaction after the verdict in Judge Arguello's case "became a final, non-appealable judgment on July 29, 2011, (and) James River still made **no payment of any kind** to Rapid Funding for the 'actual cash value' of the building." *Complaint*, ¶ 23 (emphasis in original). Rapid Funding alleges that July 29, 2011, is the point in time at which James River's non-payment became unreasonable. In the context of these allegations, I conclude that Rapid Funding's §§1115 & 1116 claim is not barred by the applicable statute of limitaions.

## C. FAILURE TO STATE A CLAIM

James River argues that Rapid Funding's §§1115 & 1116 claim is based only on a claim that James River continues to refuse to make payment on Rapid Funding's insurance claim. This refusal began, James River contends, before §§1115 & 1116 were effective. According to James River, Rapid Funding cannot state a claim for violation of §§1115 & 1116 based solely on the allegation that James River's refusal has continued beyond the time at which §§1115 & 1116 became effective. Under Colorado law, a common law claim of bad faith breach of insurance contract may not be based on an alleged continuing or ongoing refusal to pay. ***Kisselman***, ___ P.2d at ___, 2011 WL 6091708, at *12. However, as the court noted in ***Kisselman***,

> nothing in the Statutes suggests, as American Family contends, that insurers may unreasonably delay or deny payment of a pre-effective date claim for benefits owed after the Statutes' effective date and thereby avoid the proscriptions and remedies set forth in the Statutes. Taken to its logical extreme, American Family's argument would mean that an insured who made a claim for benefits on August 4, 2008, would be foreclosed from bringing an action under the Statutes for an insurer's acts of unreasonable delay or denial starting on August 5, 2008 and continuing thereafter. In our view, this result would be contrary to the intent of the General Assembly.

***Kisselman***, ___ P.2d at ___, 2011 WL 6091708, at *13.

Given this legal landscape, I conclude that Rapid Funding adequately has alleged facts in support of its §§1115 & 1116 claim. As described above, Rapid Funding alleges that the circumstances surrounding its claim changed significantly after §§1115 & 1116 were effective when portions of the jury's verdict in Judge Arguello's case became final and non-appealable. Again, those portions of the verdict hold that James River acted unreasonably and in bad faith when it failed to pay Rapid Funding the reasonable value of the building. Given this change in the circumstances of its

insurance claim, Rapid Funding alleges that James River acted unreasonably when it failed to pay any amount on Rapid Funding's claim after July 29, 2011. Assuming the allegations in the complaint to be true, such inaction constitutes a new iteration of unreasonable conduct, and is more than a claim that previous unreasonable conduct continued beyond the effective date of §§1115 & 1116. The allegations in Rapid Funding's complaint are sufficient to state a claim on which relief can be granted under §§1115 & 1116.

## V.  CONCLUSION & ORDER

Rapid Funding's claim under §§1115 & 1116 is not barred by *res judicata* or under the two year statute of limitations asserted by James River. The allegations in Rapid Funding's complaint are sufficient to state a claim on which relief can be granted.

**THEREFORE, IT IS ORDERED** that the defendant's **Motion for Judgment on the Pleadings, Based on Res Judicata, Statute of Limitations, and *Twombly*** [#12] filed February 22, 2012, is **DENIED**.

Dated September 28, 2012, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge